**THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **FERRATEX, INC.** | |
| **Plaintiff,** | **Civil Action No.: 2:14-cv-07527-ES-JAD** |
| **v.** | |
| **U.S. SEWER & DRAIN, INC., JEREMY BOWMAN, JOHN DOE(S) 1-10 (FICTITIOUS NAMES REPRESENTING UNKNOWN INDIVIDUALS), and XYZ CORP(S)1-10 (FICTITIOUS NAMES REPRESENTING UNKNOWN CORPORATIONS),** | **OPINION AND ORDER** |
| **Defendants.** | |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court upon Defendants', U.S. Sewer & Drain Inc. and Jeremy

Bowman's (collectively "Defendants"), Motion to Transfer Venue to the Eastern District of

Pennsylvania[1], or alternatively for reassignment to the Trenton Vicinage of the District of New

Jersey.[2]  (Mot. to Transfer, ECF No. 22).  This Court has carefully considered the written

submissions of the parties and has decided the matter without oral argument, pursuant to Federal

Rule of Civil Procedure 78(b).  For the reasons stated below, the Court concludes that venue is

proper in the District of New Jersey and that transfer to the Eastern District of Pennsylvania would

not serve the interests of justice.  Moreover, Defendants have neither satisfied the procedural

---

[1] Defendants seek transfer under 28 U.S.C. § 1406(a), as they believe venue in this District is improper. Because, for the reasons below, the Court concludes that venue in this district is proper, it will instead consider transfer under 28 U.S.C. § 1404(a), which assumes that venue in the current forum is appropriate. Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007).

[2] Defendants do not dispute that they are subject to personal jurisdiction in the District of New Jersey.

prerequisite nor provided a substantive basis for their reassignment request. As such, the Court **DENIES** Defendants' Motion to Transfer in its entirety.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The underlying lawsuit arises out of agreements between Plaintiff FerraTex, Inc. ("FerraTex"), and Defendants regarding several construction projects. The projects at issue are the following: (1) the "Garden State Parkway Project" ("GSP Project") in New Jersey, (2) the "Exxon Project," in New York, and (3) the "Cayman Project" in the Cayman Islands. (Am. Compl., ECF No. 17, at 2, ¶ 6).

FerraTex contends that Defendants failed to pay in full for goods and services rendered in connection with the Projects. (Am. Compl., ECF No. 17, at 5, ¶¶ 23-26). FerraTex contends that in failing to make such payments, Defendants breached the following: (1) the "Letter Agreement" (memorializing the price of the GSP Project), (2) the GSP Subcontract, (3) the Cayman Subcontract, (4) the implied covenant of good faith and fair dealing inherent in those agreements, and (5) the "Personal Guarantee" (memorializing Defendant Bowman's individual guarantee of all sums due to FerraTex in connection with the Projects). (Am. Compl., ECF No. 17). FerraTex additionally seeks recovery under the doctrine of quantum meruit in connection with the GSP Project and the Cayman Project, and raises causes of action of unjust enrichment with regard to the GSP Project and the Cayman Project, and for promissory estoppel regarding the GSP Project and the Cayman Project. (Id.).

The parties negotiated and signed the Personal Guarantee in Monmouth County, New Jersey on or about July 11, 2015. (Am. Compl., ECF No. 17, at 3-4, ¶¶ 10, 16). The parties negotiated the Letter Agreement during the same New Jersey meeting. (Id. at 3, ¶¶ 10-11). The

2

GSP Project price, as memorialized in the Letter Agreement, included sums due to FerraTex regarding the Exxon Project. (Id. ¶ 13; Ex. A, ECF No. 26-1, at 1).

FerraTex's original pleading mentioned only sums due in connection with the New York-based Exxon Project and Cayman Islands-based Cayman Project when describing FerraTex's causes of action. (Compl., ECF No. 1). As a result, Defendants moved to transfer venue to the Eastern District of Pennsylvania on February 5, 2015, claiming that "New Jersey has utterly no material involvement with the dispute." (Def.'s Br. in Supp., ECF No. 11-1, at 5). On February 23, 2015, however, FerraTex filed an Amended Complaint that expressly included the New Jersey GSP Project in the First through Fifth Counts. (Am. Compl., ECF No. 17, at 6-10, ¶¶ 28-58).[3]  In light of the contents of the Amended Complaint, which included clear New Jersey connections, this Court administratively terminated Defendants' Motion to Transfer Venue on March 30, 2015. (ECF No. 21).

On April 29, 2015, Defendants filed the instant Motion to Transfer. Defendants, apparently questioning the veracity of the factual allegations contained in FerraTex's amended pleading, highlight that FerraTex "now alleges that there is, in fact, and [sic] outstanding balance of $12,717.98 from the work it performed as a subcontractor in New Jersey, despite the glaring omission of the same in the initial Complaint filed." (Def.'s Br. in Supp., ECF No. 22, at 5-6). Moreover, Defendants argue that even if truthful, the amended pleading does not support a finding that New Jersey is a proper venue. Specifically, Defendants contend that venue in New Jersey is improper because the act of signing the Personal Guarantee in New Jersey is not "substantial"

---

[3] As mentioned above, the price of the GSP Project includes money due in connection with the Exxon Project. (Am. Compl., ECF No. 17, at 3, ¶ 13). The counts mentioning the GSP Project in the Amended Complaint echo those mentioning the Exxon Project in the original Complaint. (Am. Compl., ECF No. 17; Compl., ECF No. 1). It is therefore possible that the amounts listed are in connection with construction work performed in New York.

3

under the meaning of § 1391(b), and that the sum alleged to be due for construction on the GSP Project comprises only 8.9% of the total at issue under the Letter Agreement, which Defendants argue is insufficient for venue purposes. (Id. at 6).

Conversely, FerraTex relies on Shore Slurry Seal, Inc. v. CMI Corp., 964 F. Supp. 152, 154 (D.N.J. 1997), to ascribe ample significance to the location in which the parties negotiated and entered into the agreements, emphasizing that the entirety of the amount at issue can be traced to a New Jersey meeting and is therefore linked to New Jersey. (See Pl.'s Br. in Opp'n, ECF No. 25, at 16, 18). In addition, FerraTex highlights that the sums owed regarding work performed for the Exxon Project and Cayman Project are recoverable under the Letter Agreement and Personal Guarantee, and are therefore connected to New Jersey. (Id. at 20).

In the alternative to transferring the matter to the Eastern District of Pennsylvania, Defendants argue that even if New Jersey is a proper venue, Plaintiffs filed this action in the incorrect vicinage. Defendants stress that the meeting during which the parties entered into the agreements at issue took place in Wall Township, located in Monmouth County, New Jersey. (Am. Compl., ECF No. 17, at 3, ¶ 10). Furthermore, Defendants contend that the construction of the GSP Project occurred solely in Ocean County, New Jersey. (Certification of Steven D. Janel in Supp., ECF No. 22-1, at 1). Because both Monmouth County and Ocean County fall within the Trenton Vicinage of this District, Defendants argue that the Court should reassign this action to the Trenton Vicinage. Defendants further contend that FerraTex filed suit in the Newark Vicinage for an improper reason, namely for the convenience of FerraTex's New Jersey-based parent company, Spinello Construction Co. (Def.'s Br. in Supp., ECF No. 22, at 6-7).

4

## II.   <u>LEGAL STANDARD – Venue</u>

28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a) govern venue transfers in civil cases.   A

district court may only dismiss or transfer a case under § 1406(a) if it finds the original venue

improper.   Alternatively, § 1404(a) gives a district court discretion to transfer venue for the

convenience of the parties even if the court finds that the original venue is proper under 28 U.S.C.

§ 1391(b).   Section 1391(b) provides the following standard for determining whether venue is

proper:

> Venue in General – A judicial decision may be brought in:
>
> (1) a judicial district in which any defendant resides, if all defendants are residents
> of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving
> rise to the claim occurred, or a substantial part of property that is the subject of the
> action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided
> in this section, any judicial district in which any defendant is subject to the court's
> personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Plaintiff alleges that venue is proper in this District pursuant to § 1391(b)(2).   (Am. Compl.,

ECF No. 17, at 1).

## III.   <u>DISCUSSION AND ANALYSIS</u>

As the legal analysis differs based on whether § 1404(a) or § 1406(a) applies, the Court

must first determine whether the District of New Jersey is a proper venue for this matter.   If

Defendants can sustain their burden of demonstrating that a "substantial part of the events or

omissions giving rise to the claim" did not take place in New Jersey (i.e., Plaintiff's only stated

basis for venue in this District), then the Court will apply § 1406(a) because venue here would be

improper.   Section 1406(a) states: "The district court of a district in which is filed a case laying

venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer

such case to any district or division in which it could have been brought." Accordingly, the Court "must determine: '(1) whether the proposed forum is one in which Plaintiff could have originally brought suit, (2) and if so, whether transfer would be in the interest of justice.'" <u>Santomenno v. Transamerica Life Ins. Co.</u>, No. CIV. A. 11-736, 2012 WL 1113615, at *2 (D.N.J. Mar. 30, 2012) (quoting <u>Santi v. Nat'l Bus. Records Mgmt., LLC</u>, 722 F. Supp. 2d 602, 606 (D.N.J. 2010)).

Conversely, if Defendants cannot sustain their burden of showing that venue is improper under § 1391(b)(2), then the Court will apply § 1404(a).  See <u>Ziemkiewicz v. R+L Carriers, Inc.</u>, No. CIV.A. 12-1923, 2013 WL 505798, at *1 (D.N.J. Feb. 8, 2013) (noting that if "jurisdiction and venue is proper, this Court has the authority to <u>sua sponte</u> transfer this case pursuant to 28 U.S.C. § 1404(a)"); <u>accord</u> <u>Lester v. Gene Exp., Inc.</u>, No. CIV. 09-0403, 2009 WL 3757155, at *8 n. 5 (D.N.J. Nov. 10, 2009).  Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

Once the Court determines the applicable transfer statute, the Court will then determine whether transfer to the Eastern District of Pennsylvania would be appropriate under that standard.

### a.    Venue in the District of New Jersey

#### i.    Venue Pursuant to § 1391(b)(2)

The Court first examines the propriety of venue under § 1391(b)(2), Plaintiff's only stated basis for venue in this District.  Under that subsection, venue is appropriate in a judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred."  § 1391(b)(2).  One Court in this District has detailed the proper method for determining whether the substantiality requirement has been met:

> The Court of Appeals for the Third Circuit has emphasized that events or omissions supporting a claim must be 'substantial,' and that events or omissions with only 'some tangential connection with the dispute in litigation are not enough.' Cottman Transmission Sys., Inc., [sic] v. Martino, 36 F. 3d 291, 294 (3d Cir. 1994). The purpose of the substantiality requirement is to 'preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute.' Id. at 294. To assess 'whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute.' Id. at 295. In this regard, the Undersigned notes that the test for personal jurisdiction is different than venue since '[t]he test for determining venue is not the defendant's "contacts" with a particular district, but rather the location of those "events or omissions giving rise to the claim."' Id. at 294.

Stalwart Capital, LLC v. Warren St. Partners, LLC, No. CIV. 11-5249, 2012 WL 1533637, at *4 (D.N.J. Apr. 30, 2012).

Furthermore, "[i]n an action sounding in contract, the factors determining where the claim arose include where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred." Frato v. Swing Staging, Inc., Civ. A. No. 10–5198, 2011 WL 3625064, at *4 (D.N.J. Aug. 17, 2011) (citing Allianz Life Ins. Co. of N. Am. v. Bleich, Civ. A. No. 08-668, 2008 WL 4852683, at *5 (D.N.J. Nov. 7, 2008)).[4]

Here, in a sworn document, Gerhardt Rodenberger, General Manager of FerraTex, contends that the parties negotiated and entered into the Letter Agreement, as well as negotiated and signed the Personal Guarantee, during a meeting in New Jersey. (Aff. of Gerhardt Rodenberger, ECF No. 26, at 2-4, ¶¶ 6, 9 & 15). In its papers, FerraTex highlights the weight this factor carries in a § 1391(b)(2) substantiality determination. (Pl.'s Br. in Opp'n, ECF No. 25, at 16, 18).

---

[4] Defendants' emphasis on Spiniello Co.'s v. Moynier, Civ. No. 2:13-5145, 2014 WL 7205349 (D.N.J. Dec. 17, 2014), is misplaced. Unlike the plaintiff in Spiniello, FerraTex is not arguing that venue is proper because defendant visited plaintiff's New Jersey company and because plaintiff felt the effects of the breach in New Jersey. Rather, FerraTex's argument centers on the location of contractual negotiations, performance, and breach.

Defendants argue that, as only 8.9% of the total amount at issue is potentially connected with the construction of the New Jersey-based GSP Project[5], that connection is not "substantial" enough to trigger venue under § 1391(b)(2). (Def.'s Br. in Supp., ECF No. 22, at 6). Defendants highlight that by contrast, the New York-based Exxon Project and the Cayman Islands-based Cayman Project amount to 82.4% and 8.7% of the total amount due, respectively. (Id.). The Court, however, does not agree with Defendants that the percentage is too small to be "substantial" under § 1391(b)(2). "[T]he Third Circuit instructed that when 'assessing whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute.'" Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 295 (3d Cir. 1994) (emphasis added). Accordingly, there is no threshold for when a percentage of the total at issue becomes substantial under § 1391(b). See Lannett Co. v. Asherman, No. CIV.A. 13-2006, 2014 WL 716699, at *3 (E.D. Pa. Feb. 24, 2014) ("When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and thus, substantial. . . . At bottom, the substantiality inquiry is more qualitative than quantitative.") (internal quotations and citations omitted)).

Moreover, this Court agrees with FerraTex that there can be more than one place in which a "substantial part" of the acts or omissions occurred. The Third Circuit has said that a court is not required to determine the "best" forum. Cottman Transmission Sys., 36 F.3d at 294. Rather, multiple fora can serve as appropriate venues under § 1391(b)(2). Leone v. Cataldo, 574 F. Supp. 2d 471, 484 (E.D. Pa. 2008). Thus, while it is possible that a larger portion of the performance of

---

[5] The Letter Agreement says that $116,695.40 for the Exxon Project is included in the price of the GSP Project. (Ex. A, ECF No. 26-1, at 1). Even if the full Exxon Project amount is included in the $129,413.38 allegedly due in connection with the Letter Agreement, $7,717.98 for the GSP Project is still needed to reach the total.

the contracts at issue may have occurred in New York or in the Cayman Islands, as Defendants contend it did, this Court finds that New Jersey would not be disqualified even if Defendants' contention is correct.[6]

While Defendants appear to doubt the veracity of the information contained within the Amended Complaint, as FerraTex did not include allegations regarding amounts due in connection with the GSP Project in the original Complaint, (Compl., ECF No. 1, at 5-16, ¶¶ 20, 23-92), this Court must take Plaintiff's factual allegations as true at this point in the litigation. See, e.g., RAIT P'ship, L.P. v. Fieldstone Lester Shear & Denberg, LLP, No. 09-28-GMS/MPT, 2009 WL 3297310, at *2 (D. Del. Oct. 14, 2009) report and recommendation adopted, No. CIV.A. 09-28, 2010 WL 786551 (D. Del. Mar. 3, 2010) ("In Rule 12(b)(3) [improper venue] motions, the court must generally accept the allegations in the complaint as true.").

In any event, as the price of the New Jersey GSP Project as memorialized in the Letter Agreement includes sums owed in connection with the Exxon Project, (Am. Compl., ECF No. 17, at 3, ¶ 13), the Court agrees with FerraTex that New Jersey, the location the parties entered into the contract and where partial performance occurred, is also the location of an alleged breach.

As contractual negotiations, contract execution, partial performance, and alleged breach appear to have occurred in New Jersey, this Court is persuaded that a substantial portion of the events or omissions giving rise to the instant action occurred in this District. The Court therefore finds that venue in New Jersey is proper pursuant to § 1391(b)(2). See Shore Slurry Seal, Inc. v. CMI Corp., 964 F. Supp. 152, 154 (D.N.J. 1997) (finding venue in New Jersey proper when "[t]he

---

[6] The Court notes that while performance of the construction contract at issue occurred in each of New Jersey, New York, and the Cayman Islands, no one has alleged that any of the performance occurred in Pennsylvania, Defendants' proposed alternative forum. In fact, the only tie this Court sees to Pennsylvania, is that it is where the Defendants are located.

parties signed the sales agreement in New Jersey" and "defendant shipped the equipment to New Jersey").

    b.    **Transfer to the Eastern District of Pennsylvania**

Having found that venue in New Jersey is proper in this matter, the Court must apply § 1404(a) rather than § 1406(a) to determine whether transfer is appropriate under the circumstances. See, e.g., Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007). A prerequisite for the Court to transfer pursuant to § 1404(a) is that venue would be proper in the proposed district. See, e.g., Frato, 2011 WL 3625064, at *2 (citing Santi, 722 F. Supp. 2d at 606). The Court finds venue would be proper in the Eastern District of Pennsylvania, pursuant to § 1391(b)(1), as both named defendants are based in Langhorne, Pennsylvania (Bucks County), which falls within the geographic boundaries of the Eastern District of Pennsylvania. (Am. Compl., ECF No. 17, at 2, ¶¶ 4-5).

That venue is proper in the Eastern District of Pennsylvania, however, does not necessarily direct the Court to grant Defendants' motion, as venue may be proper in more than one forum. See, e.g., Giant Peach Records, LLC v. Mitchell, No. 2:13-CV-01702 SDW, 2014 WL 1234429, at *2 (D.N.J. Mar. 25, 2014) (quoting Database Am., Inc. v. Bellsouth Adver. & Pub. Corp., 825 F.Supp. 1216, 1224 (D.N.J.1993)) ("Venue may be appropriate in more than one district 'provided that 'substantial' activities occurred in multiple judicial districts.'"). To succeed on their motion, Defendants must not only demonstrate that venue would be proper in their proposed forum, but they must also establish that litigating in that forum would be more convenient than proceeding in New Jersey. See Santomenno, 2012 WL 1113615, at *2 (quoting Santi, 722 F. Supp. 2d at 606) ("The moving party bears the burden of establishing that the transfer is appropriate and must

establish that the alternative forum is more convenient than the present forum.") (internal quotations omitted)).

> **i.      Factors to Consider When Determining Whether a Convenience Transfer is Appropriate under 28 U.S.C. § 1404(a)**

As noted above, Section 1404(a) reads in relevant part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In the Third Circuit, however, courts must not to limit their consideration to the factors expressly stated in § 1404(a), "but rather are instructed to employ an analysis of all 'relevant public and private interests.'" Frato, 2011 WL 3625064, at *2 (quoting Santi, 722 F. Supp. at 606). The relevant private interests include: "(1) plaintiff's forum preference; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the location of books and records." Id. (citing Jumara v. State Farm Ins. Co., 55 F. 3d 873, 879 (3d Cir. 1995)). The relevant public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." Id. (citing Jumara, 55 F. 3d at 879-80). The Court will address these factors in turn.

> **ii.     Private Interest Factors**

> **A.      Plaintiff's Preference**

"A '[p]laintiff's choice of forum is a paramount consideration that should not lightly be disturbed.'" Id. at *3 (quoting Clark v. Burger King Corp., 255 F. Supp. 2d 334, 338 (D.N.J. 2003)) (alteration in original). However, a plaintiff's preference, manifested through his or her

forum choice, is to be given less deference when the choice is not the plaintiff's home forum. See, e.g., Microsoft Corp. v. LBS Innovations LLC, No. 12-CV-0848, 2012 WL 6028857, at *3 (D.N.J. Nov. 8, 2012). In the instant matter, FerraTex is a Virginia corporation. (ECF No. 17, at 2, ¶ 3). Therefore, FerraTex's preference can be more easily overcome than could a New Jersey corporation's preference.

### B.      Defendants' Preference

Defendants wish to litigate in their home fora of Pennsylvania. Defendant U.S. Sewer & Drain is incorporated in Pennsylvania and has its principal place of business in Pennsylvania. (Am. Compl., ECF No. 17, at 2, ¶ 4). Defendant Bowman is a Pennsylvania resident. (Id. ¶ 5). This factor accordingly weighs in favor of transfer.

### C.      <u>Where the Claim Arose</u>

In contract actions, "the factors determining where the claim arose include where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred." Frato, 2011 WL 3625064, at *4 (citing Allianz Life Ins. Co. of N. Am., Civ. A. No. 08-668, at *5 (D.N.J. Nov. 7, 2008)). As discussed in this Court's § 1391(b)(2) analysis, the Court finds that the instant claims against Defendants arose primarily in New Jersey. The parties negotiated the Letter Agreement and Personal Guarantee, which collectively encompass all of the funds alleged to be due to FerraTex, in New Jersey. (Am. Compl., ECF No. 17, at 3-4 ¶¶ 11, 16). Defendant Bowman also executed the Personal Guarantee in New Jersey. (Id. at 4, ¶ 17). The Letter Agreement incorporates at least a portion of the amount due for construction for the Exxon Project into the price of the GSP Project. (Id. at 3, ¶ 13). The Personal Guarantee covers the amount at issue for the Cayman Project, as it covers all sums owed to FerraTex from U.S. Sewer & Drain. (Id. at 4, ¶¶ 17-18; Ex. B, ECF No. 26-2 at 1). As the New Jersey-based GSP Project is

one of the three construction projects at issue, performance occurred in part in New Jersey, as did the alleged breach. (Id. at 2, ¶¶ 6-7). Nothing in the record establishes that the claims at issue arose in Pennsylvania. Accordingly, this factor weighs against transfer.

**D    Convenience of the Parties**

The next private interest factor under § 1404(a) is convenience of the parties. FerraTex is unlikely to be more inconvenienced by either a New Jersey or Pennsylvania forum because the fora are approximately equidistant from Virginia, the place of FerraTex's incorporation and principal place of business. (Am. Compl., ECF No. 17, at 2, ¶ 3). Moreover, transfer to the Eastern District of Pennsylvania would decrease Defendants' trip by only approximately forty miles, as Langhorne, Pennsylvania (where Defendants are located) is approximately sixty-five miles from Newark, New Jersey and approximately twenty-five miles from Philadelphia, Pennsylvania (the likely destination for this case should the Court elect to transfer this matter to the Eastern District of Pennsylvania). The Court notes that "[u]nless the defendant can show that the inconvenience to the parties strongly favors its preference, plaintiff's choice of forum should prevail." Santi, 722 F. Supp. 2d at 607 (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970)).

Furthermore, in the Personal Guarantee, which encompasses all funds at issue in this action, Defendant Bowman consented to the "jurisdiction of the courts of New Jersey in any action or proceeding . . . arising out of this personal guarantee." (Ex. B, ECF. No. 26-2, at 1-2). While there is no similar consent paragraph in the Letter Agreement, it appears that traveling to New Jersey would not be burdensome to Defendant U.S. Sewer & Drain, as U.S. Sewer & Drain is the plaintiff in a breach of contract action it filed on February 26, 2015 in the District of New Jersey. (Certification of Steven D. Janel in Supp., ECF No. 22-1, at 2); U.S. Sewer & Drain, Inc. v. Earle

Asphalt Co., Civ. No. 15-1461, 2015 WL 3461087 (D.N.J. filed Feb. 26, 2015).  As such, the Court concludes that this factor weighs against transfer.

### E.   Convenience of Witnesses

As the two districts are spaced relatively close together, with a distance of approximately eighty-six miles apart, convenience of any witnesses should not pose a problem.  Moreover, the Court only considers this factor "to 'the extent that the witnesses may actually be unavailable for trial in one of the fora.'"  Ziemkiewicz v. R+L Carriers, Inc., No. CIV. A. 12-1923, 2013 WL 505798, at *4 (D.N.J. Feb. 8, 2013) (quoting Jumara, 55 F. 3d at 879).  Here, neither party has identified any witnesses who would be unavailable to testify at trial in either potential forum.  Accordingly, this factor is neutral.

### F.   Location of Books and Records

"The location of books and records is only material 'to the extent that the files could not be produced in the alternative forum.'"  Ziemkiewicz, 2013 WL 505798, at *4 (quoting Jumara, 55 F. 3d at 879).  "[I]t is often irrelevant today because of 'recent technological advances' that enable the documents at issue in the litigation to be readily produced in even a distant forum."  Id. (quoting Jumara, 55 F. 3d at 879).  As neither party has identified any documents that would be unavailable in either forum this factor is also neutral.

In summary, the Court finds on balance that the above private interest factors weigh against transfer to the Eastern District of Pennsylvania.

### iii.   Public Interest Factors

For similar reasons, the Court finds the public interest considerations involved with the Court's § 1404(a) analysis also weigh against transfer.  As mentioned above, the public interests relevant to the Court's analysis are:

14

(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

Frato, 2011 WL 3625064, at *2 (citing Jumara, 55 F. 3d at 879-80).

### A.    Enforceability of the Judgment

The "enforceability of the judgment" factor is neutral, as a judgment rendered in either this District or the Eastern District of Pennsylvania could easily be registered in another District. Nothing in the record for this matter suggests otherwise.

### B.    Practical considerations

Neither party has identified any practical considerations that would increase efficient use of court resources in a particular district. This factor is also neutral.

### C.    Court Congestion

Neither party has notified the Court that one venue has a substantially more congested docket than the other. The Court recognizes that both Districts are quite busy. Therefore, this factor is neutral.

### D.    Local Interest

In analyzing local interest in the transfer analysis context, this Court has considered the "locus of the majority of the relevant conduct" and where the agreements "transpired," rather than the residences of the parties. Chigurupati v. Daiichi Sankyo Co., No. CIV. 10-5495, 2011 WL 3443955, at *6 (D.N.J. Aug. 8, 2011) aff'd, 480 F. App'x 672 (3d Cir. 2012). As the agreements here transpired primarily in New Jersey and not in Pennsylvania, the Eastern District of Pennsylvania has little local interest in adjudicating this dispute despite the Pennsylvania residencies of Defendants. Conversely, contractual negotiations and execution, an alleged breach,

15

and construction of one of the projects at issue occurred in New Jersey. As "[t]he burden of jury duty should not be placed on citizens with a remote connection to the lawsuit," New Jersey residents rather than Pennsylvania residents should act as jurors during any trial. See Coppola v. Ferrellgas, Inc., 250 F.R.D. 195, 200-01 (E.D. Pa. 2008) (quoting Nat'l Prop. Investors VIII v. Shell Oil Co., 917 F. Supp. 324, 330 (D.N.J. 1995)).

Additionally, Defendants concede that the GSP Project concerns the development of the Garden State Parkway, a major New Jersey highway. (Certification of Steven D. Janel in Supp., ECF No. 22-1, at 1-2, ¶ 5). The GSP Project consists of a multitude of changes to the highway including a new lane, new bridges, new sign structures, and removal of existing bridges. (Id.). When a forum has "historically and actively regulated the conduct or parties at issue," as New Jersey regulates its state highways, the local interest is substantial. See Silvis v. Ambit Energy, L.P., No. CIV. A. 14-5005, 2015 WL 1134780, at *4 (E.D. Pa. Mar. 13, 2015) (citing Barilotti v. Island Hotel Co., No. 13-23672, 2014 WL 1803374, at *10 (S.D. Fla. May 6, 2014)). Pennsylvania has no corresponding interest in this case. Accordingly, the Court finds that the local interest is significantly greater in New Jersey, and this factor weighs against transfer.

### E.    Public Policies of the Fora

Neither party has alleged that the public policies of either forum are more or less favorable to the claims and defenses at issue. The Court finds that this factor is therefore neutral to its analysis.

### F.    Familiarity of the Trial Judge with the Applicable State Law

The final public interest factor concerns the familiarity of the trial judge with applicable state law. This factor is relevant because the instant matter is a diversity action, so state substantive law applies. See, e.g., Santomenno, 2012 WL 1113615, at *10.

16

"New Jersey choice of law rules instruct that the governing law in contract cases is 'that of the jurisdiction with the most significant relationship and closest contacts with the transaction and the parties.'" Chigurupati, 2011 WL 3443955, at *6 (quoting Pepe v. Rival Co., 85 F. Supp. 2d 349, 380 (D.N.J. 1999)) aff'd, 480 F. App'x 672 (3d Cir. 2012). It appears that Plaintiff's claims arose primarily in New Jersey, and that New Jersey law will therefore apply to those claims.

However, the Court notes that this factor does not weigh strongly in either direction as two districts in close proximity to each other "inevitably" must adjudicate many diversity actions and are likely capable of applying the other's law if the case does not present "novel or complex issues." Frato, 2011 WL 3625064, at *6. Moreover, nothing in the record suggests that the relevant legal principles (i.e., the law governing contract and quasi-contractual/equitable principles) differs significantly between New Jersey and Pennsylvania. The Court finds that this factor is essentially neutral to its analysis. The Court acknowledges, however, that to the extent there is any benefit to be gained by the District of New Jersey's familiarity with the New Jersey law at issue, this factor weighs against transfer.

### iv.    Taken Together, the *Jumara* Factors Weigh Against Transfer

The Court finds that, on balance, the Jumara factors weigh against transferring this matter to the United States District Court for the Eastern District of Pennsylvania. The Court therefore finds that transfer would be inappropriate under 28 U.S.C. § 1404(a).

### c.    Reassignment to the Trenton Vicinage

In the alternative to transferring this matter to the Eastern District of Pennsylvania, Defendants have requested in passing that the Court reassign this case to the Trenton Vicinage of the District of New Jersey. Local Rule of Civil Procedure 40.1 governs the initial assignment and reassignment of cases to vicinages and judges within this District.

Defendants here have not provided any analysis under Rule 40.1, let alone directed their application to the Chief Judge, who is entrusted with the sole authority to dispose of such matters under the local civil rules. Local R. Civ. P. 40.1(d), (e).

This Court therefore denies without prejudice Defendants' application to transfer this matter to the Trenton Vicinage of the District of New Jersey.

## IV.   CONCLUSION

Based on the foregoing, Defendants' motion to transfer to the Eastern District of Pennsylvania (ECF No. 22) is **DENIED**. Because venue is proper in the District of New Jersey, Defendants may only seek a discretionary transfer under 28 U.S.C. § 1404(a). A discretionary transfer to the Eastern District of Pennsylvania would inappropriate because Defendants have failed to demonstrate that the relevant private and public interest factors, which the United States Court of Appeals articulated in <u>Jumara</u>, weigh in favor of transfer. In addition, for the reasons discussed above, Defendants' application to reassign this action to the Trenton Vicinage is **DENIED WITHOUT PREJUDICE** to Defendants' right to make an appropriate application to the Chief Judge pursuant to Local Civil Rule 40.1.

**SO ORDERED**

_____  8/3/15

**JOSEPH A. DICKSON, U.S.M.J.**

cc:   Hon. Esther Salas, U.S.D.J.